**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0352n.06**
**Filed: May 17, 2006**

**No. 04-1793**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DONALD CHARLES WIEDBRAUK, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| FABIAN LAVIGNE, Warden, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

Before: SUHRHEINRICH, GILMAN, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This is a habeas case in which the petitioner sought to amend his petition to include newly exhausted claims. Approximately four months before the end of AEDPA's one-year limitations period for submitting a petition in federal court, petitioner Donald Wiedbrauk, a state prisoner, submitted his habeas petition to the federal district court with both exhausted and unexhausted claims. After the district court stated that it would not hear his unexhausted claims, Wiedbrauk returned to state court to exhaust those claims. The state trial court held that some of the claims were procedurally defaulted and that some had been raised and decided on direct appeal. When Wiedbrauk returned to federal court, he moved for leave to amend his petition so that he could add his newly asserted claims. The district court denied Wiedbrauk's motion on grounds of prejudice and excessive delay. For the following reasons, we affirm on the alternative ground that granting leave to amend would be futile.

I.

Wiedbrauk was convicted in 1998 in Michigan state court of second-degree murder and possession of a firearm during the commission of a felony. He was sentenced to 25 to 40 years' imprisonment for the second-degree murder conviction and to two years' imprisonment for the firearm conviction. *People v. Wiedbrauk*, No. 214806, 1999 WL 33433527, at *1 (Mich. Ct. App. Oct. 29, 1999) (per curiam). The Michigan Court of Appeals affirmed Wiedbrauk's convictions and sentence in 1999 after rejecting Wiedbrauk's ten claims for relief. *See id.* The Michigan Supreme Court denied Wiedbrauk leave to appeal on May 31, 2000. *See People v. Wiedbrauk*, 616 N.W.2d 689 (Table) (Mich. May 31, 2000).

Wiedbrauk claims that he did not learn of the Michigan Supreme Court's denial until March 9, 2001. Wiedbrauk claims that his first attorney, Susan Reed, abandoned his case and would not respond to his letters. *See* JA 178-85. After he learned that the Michigan Supreme Court denied him leave to appeal, he sought to have Reed forward his entire court file to him so that he could pursue post-conviction relief. *See, e.g.*, JA 183-84. On or around April 18, 2001, Wiedbrauk's new lawyer, Richard Adams, sent him "miscellaneous documents and records, including the original police reports, that are relevant to the preparation of [his] appeal." JA 186. Adams also informed Wiedbrauk to "advise whether or not it would be necessary for [Adams] to obtain any other court filed documents." JA 186.

Wiedbrauk filed his habeas petition in federal district court on April 30, 2001. JA 7. He

filed a "mixed petition," i.e., a petition asserting exhausted and unexhausted claims. The six

exhausted claims concerned the following:

(1) refusal to appoint a forensic pathologist to serve as a witness for the defense;

(2) admission of an alleged involuntary confession;

(3) admission of highly prejudicial photographs;

(4) failure to preserve material evidence;

(5) prosecutorial misconduct; and

(6) failure to receive a speedy trial.

In his petition, he asked the district court to hold his petition in abeyance while he returned

to state court to exhaust the unexhausted claims. JA 12-13. The district court on July 23, 2001,

refused to hold Wiedbrauk's petition in abeyance because it was a mixed petition. JA 188-89. The

district court's refusal to hold the mixed petition in abeyance complied with the law of this circuit

at that time. JA 188-89 (referring to *Morris v. Bell*, No. 96-5510, 1997 WL 560055, at \*2 (6th Cir.

Sept. 5, 1997)).[1] The district court, however, told Wiedbrauk that he could voluntarily dismiss his

petition in full without prejudice and that he could file another petition after exhausting all of his

claims. JA 188-89. The district court did not dismiss his petition. JA 189. Because Wiedbrauk

never filed a motion to dismiss, the petition proceeded with only the exhausted claims. *See* JA 129-

33.

---

[1]This court later adopted the abeyance procedure that Wiedbrauk advocated. *See Palmer v. Carlton*, 276 F.3d 777, 780-82 (6th Cir. 2002) (referring to *Duncan v. Walker*, 533 U.S. 167, 182-84 (2001) (Stevens, J., concurring)), *and Hill v. Anderson*, 300 F.3d 679, 683 (6th Cir. 2002).

On October 1, 2001, the warden filed the state-court record and his response. JA 191-206. On October 17, Wiedbrauk moved to amend his petition. JA 214. The magistrate granted his motion, and Wiedbrauk amended the factual and legal bases of his original claims. JA 213. He did not add any additional claims.

Wiedbrauk returned to state court for post-conviction relief on May 29, 2002, a delay of approximately ten months from the date of the district court's denial of his motion to hold his petition in abeyance. In his brief to this court, Wiedbrauk justifies his delay by alleging that he had to review a "voluminous" trial transcript and a "thick" file of records. *See* Wiedbrauk's Br. at 6 n.2. A state trial court denied his motion for post-conviction relief on August 13, 2002. JA 104-05. The state trial court first noted that some of Wiedbrauk's claims were not properly before the trial court on collateral review because the Michigan courts had decided those claims on direct appeal. The state trial court next held that, because Wiedbrauk could have raised on direct appeal the other claims that he raised in his motion for post-conviction relief, his claims were barred by a state procedural rule, Mich. Ct. R. 6.508(D)(3). JA 105 (noting that Wiedbrauk conceded that his claims were procedurally defaulted). Moreover, although a showing of good cause and prejudice can excuse a procedural default under Michigan law, the state trial court held that Wiedbrauk had failed to make such a showing. Wiedbrauk attempted to make such a showing by arguing that he had received ineffective assistance of appellate counsel. JA 105. The state court held that his appellate counsel had not been ineffective for failing to bring claims that the court deemed frivolous. JA 105.

The Michigan Court of Appeals and the Michigan Supreme Court both denied Wiedbrauk

leave to appeal "because the defendant had failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." JA 106-07. Wiedbrauk ultimately exhausted these claims when the Michigan Supreme Court denied him leave to appeal on January 27, 2004. *See People v. Wiedbrauk*, 675 N.W.2d 595 (Table) (Mich. Jan. 27, 2004).

Wiedbrauk returned to federal court and filed a motion for leave to amend his petition to include nine more claims that Wiedbrauk claimed were recently exhausted. It is this motion for leave to amend that is the subject of the issue certified for appeal. Those nine claims, which all invoked the Federal Constitution in some manner, concerned the following:

(1) admission of his wife's testimony in violation of Michigan's spousal privilege;

(2) refusal to instruct the trial court on lesser included offenses;

(3) admission of opinion testimony from an investigating officer;

(4) failure of the trial court to appoint a ballistics expert;

(5) permitting the state's medical examiner to amend his opinion during trial;

(6) denial of his for-cause challenges to jurors;

(7) ineffective assistance of trial counsel for failing to request lesser included offenses, to make additional peremptory challenges, to object to the medical examiner's amended opinion, and to object to the jury instruction in which the court allegedly shifted the burden;

(8) errors in sentencing concerning the length of his sentence and his wife's allocution at sentencing;

(9) effect of several errors that rendered his trial fundamentally unfair;

JA 256-68. Although Wiedbrauk alleged had he had just exhausted these nine claims, the Michigan Court of Appeals had actually decided three of them on direct appeal: his spousal privilege claim, his lesser-included offenses claim, and his claim concerning his wife's allocution at sentencing. *See*

*Wiedbrauk*, 1999 WL 33433527, at *1, *3, and *4.

In his brief to this court, Wiedbrauk alleges that he submitted his motion to amend on February 24, 2004, to prison officials, but he does not refer to any part of the record to substantiate his allegation. The district court received the motion on March 2, 2004. JA 99. Before the district court received Wiedbrauk's latest motion to amend, the magistrate issued his report that recommended that the district court deny Wiedbrauk's petition, consisting of the exhausted claims that Wiedbrauk identified originally in his first petition. JA 110-27. The district court adopted the Magistrate's report and recommendations on June 1, 2004. JA 137. The district court dismissed Wiedbrauk's claims with prejudice, denied his motion for leave to amend, and denied a certificate of appealability. JA 137. Regarding the motion for leave to amend, the district court held that "[a]llowing the requested amendment at this point in the proceedings would prejudice the Respondent and cause an excessive delay in the pendency of this action." JA 133.

This court subsequently denied Wiedbrauk's petition for a certificate of appealability on December 6, 2004. Wiedbrauk timely moved this court to reconsider. On March 18, 2005, a motions panel issued a certificate of appealability concerning one issue: "whether the district court abused its discretion in denying Wiedbrauk's motion to amend his petition." JA 271. On April 18, 2005, this court appointed counsel for Wiedbrauk and ordered the parties to address the implications, if any, of *Rhines v. Weber*, 544 U.S. 269 (2005), which was decided in late March 2005.

II.

Because the district court denied Wiedbrauk's motion to amend on grounds of prejudice and delay, this court reviews for abuse of discretion. *See Fischer v. Roberts*, 125 F.3d 947, 977 (6th Cir. 1997).

We affirm the district court's order denying Wiedbrauk's motion for leave to amend on grounds of futility. Before reaching the issue certified for appeal, we address two preliminary matters. First, the limitations period had run by the time Wiedbrauk returned to state court, even if this court equitably tolls the limitations period in Wiedbrauk's favor. Second, the abeyance procedure that Wiedbrauk requested would not have helped him overcome his limitations problem because he unreasonably delayed returning to state court to exhaust his claims. Therefore, we must decide whether the district court abused its discretion in denying Wiedbrauk's motion for leave to amend on grounds of prejudice and excessive delay. Although the district court abused its discretion in denying Wiedbrauk's motion for leave to amend on grounds of prejudice and delay, we affirm, nevertheless, on the alternative ground that granting Wiedbrauk leave to amend would be futile.

III.

Wiedbrauk did not bring his newly asserted claims to the state court for exhaustion until after the Antiterrorism and Effective Death Penalty Act's (AEDPA) limitations period ended. Because Wiedbrauk filed his petition after April 24, 1996, AEDPA applies. *See Frazier v. Huffman*, 343 F.3d 780, 787 (6th Cir. 2003) (citing *Lindh v. Murphy*, 521 U.S. 320, 336 (1997)). For purposes of this

case, AEDPA requires prisoners in state custody to bring habeas petitions in state court within one year of the date upon which their cases becomes final. *See* 28 U.S.C. § 2244(d)(1). The case does not become final until ninety days after the last state court from which the prisoner seeks relief denies his appeal. *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000) (referring to *Isham v. Randle*, 226 F.3d 691, 694-95 (6th Cir. 2000)); *see also* 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled, however, when the prisoner is exhausting his claims in state court. *See id.* § 2244(d)(2).

Wiedbrauk did not bring his newly asserted claims within the limitations period. The one-year limitations period began on August 29, 2000, which is ninety days after May 31, 2000, when the Michigan Supreme Court denied Wiedbrauk leave to appeal. Therefore, the one-year limitations period ended on August 29, 2001. Wiedbrauk did not bring his claims to the state court for exhaustion until May 29, 2002, so the limitations period ended before Wiedbrauk could have tolled AEDPA's statute of limitations by bringing the claims to state court.[2]

Moreover, even if this court equitably tolls the statute of limitations until the date that Wiedbrauk received the files that he alleges were necessary for his state-court petition, he still did not return to state court until after the limitations period would have ended. Wiedbrauk received his state-court files around April 18, 2001, but he still waited over one year and one month from that

---

[2]Wiedbrauk sought to add to his petition three claims that were already exhausted. Wiedbrauk should have also brought these claims, like the ones in his original petition, to federal court by August 29, 2001. He proffers no excuse for his delay.

date (until May 29, 2002) to return to state court with his then-unexhausted claims. In response, Wiedbrauk argues only that his delay was justifiable because his file was "thick" and "voluminous." This allegation, without more, cannot justify this delay of over one year. Not only are the terms "thick" and "voluminous" not precise, but, were we to accept Wiedbrauk's excuse, most all petitioners would have more than one year to exhaust their claims because most state-court criminals have "thick" files with transcripts, motions, appeals, and other documents. Wiedbrauk's unreasonable delay in returning to state court after the one-year limitations period ended precludes him from asserting these newly exhausted claims unless he can either rely upon a stay-and-abeyance procedure or amend his petition with claims that relate back to the identified claims in the original petition.

IV.

Although Wiedbrauk argues that holding his unidentified, unexhausted claims in abeyance would have made it unnecessary for him to amend his petition, Wiedbrauk's unreasonable delay in returning to state court to exhaust his claims precludes him from relying on the abeyance procedure. In *Rhines v. Weber*, 544 U.S. 269, 125 S. Ct. 1528 (2005), the Supreme Court held that district courts have discretion, in limited circumstances, under AEDPA to hold mixed petitions in abeyance, instead of dismissing them, when the petitioner needs to return to state court to exhaust all of his claims. The Supreme Court recognized that, without an abeyance procedure, the district court's dismissal, because of crowded dockets, may occur after the limitations period expires for filing a proper application in federal court and deprive the petitioner of any chance to have a federal court

review his federal claims. *See Rhines*, 125 S. Ct. at 1533-34. Abeyance is proper, however, only in limited circumstances, otherwise "[s]tay and abeyance, if employed too frequently, has the potential to undermine the[] twin purposes [of exhaustion and finality]." *Id.* at 1534. Abeyance is appropriate only when the "petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 1535. The Supreme Court noted that, even if abeyance is granted, "district courts should place reasonable time limits on a petitioner's trip to state court and back." *Id.* at 1535.

Assuming, without deciding, that Wiedbrauk would have been able to satisfy the three-part test for an abeyance and that the district court would have granted an abeyance, Wiedbrauk's unreasonable delay in returning to state court precludes him from asserting his newly exhausted claims. An abeyance cannot last an eternity. In *Rhines*, the Supreme Court did not define with any precision how long a district court could give a petitioner to return to state court. The Supreme Court, however, cited approvingly a case from the Second Circuit that instructed the district courts to give petitioners thirty days from the date of abeyance to go to state court and thirty days from the time that state-court proceedings ended to return to federal court. *See* 125 S. Ct. at 1535 (citing *Zarvela v. Artuz*, 254 F.3d 374, 381 (2d Cir. 2001)). The district court in the *Rhines* case gave the petitioner sixty days for each trip, and the Supreme Court did not comment on this length of time. *See id.* at 1532. In contrast to a grace period of one to two months, which the *Rhines* Court would presumably deem reasonable, Wiedbrauk waited approximately ten months to return to state court

from the time of the district court's decision not to hold his petition in abeyance and approximately thirteen months from the time that he knew that his claims were not exhausted. Waiting ten months without justification was too long. Therefore, an abeyance would not have cured Wiedbrauk's failure to satisfy the limitations period, and we must decide whether the district court abused its discretion in denying Wiedbrauk leave to amend his petition.

V.

Because Wiedbrauk's nine newly asserted claims are time-barred (with or without an abeyance), he can assert them only if he can amend his petition and only if those claims "relate back" to the originally asserted claims. The district court did not address the "relation back" issue. Instead, it denied Wiedbrauk leave to amend on the grounds of prejudice and excessive delay. Although the district court should not have denied the amended petition on the grounds of prejudice and excessive delay, we affirm on the alternative ground of futility.

Neither prejudice to the warden nor excessive delay in the proceedings warranted denial of the amendments in this case. When determining whether to grant leave to amend, the district court should consider "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment . . . ." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998). The warden does not argue on appeal that the grounds upon which the district court relied—prejudice to the warden and excessive delay in the proceedings—are justifiable in this case.

- 11 -

The district court did not describe how the warden would have been prejudiced, and the warden offers no reason why he would be. The party most prejudiced, instead, would be Wiedbrauk because, without leave to amend, his claims would most likely never be heard on the merits. Furthermore, although Wiedbrauk unquestionably delayed returning to state court, neither the warden nor the district court provides any reason why the delay in federal proceedings would have been excessive, especially considering that the district court itself had not decided the case after more than a year since the warden responded to the petition. There are simply no facts in the record, or arguments on appeal, that support the district court's rationale.[3]

Remand is not required, however, because it would be futile to grant Wiedbrauk leave to amend his petition. "We may affirm a district court's [order] for reasons other than those stated by the lower court." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). Leave to amend, in this case, would be futile. All but three of Wiedbrauk's nine newly asserted claims are barred from habeas review by an independent and adequate state ground because the last state court from which Wiedbrauk sought review (the Michigan Supreme Court) relied on a procedural rule to bar six of those claims. The three other claims do not relate back to the original petition and therefore may not be asserted in Wiedbrauk's habeas petition.

---

[3]The district court noted when discussing its denial of Wiedbrauk's motion to amend that the district court had given him a choice: (1) he could either voluntarily dismiss his petition and return when all claims were exhausted, or (2) he could proceed with only those claims that were originally exhausted. JA 133. Although the district court's apparent concern that the district court hear all the claims at one time is valid, the order denying an abeyance does not clearly state that the district court would not entertain the then-unexhausted claims if later exhausted. *See* JA 189.

Michigan Court Rule 6.508(D)(3) says that the state court cannot grant relief if the defendant cannot demonstrate good cause and actual prejudice for failing to have raised claims that could have been raised on direct appeal. This court has previously held that Rule 6.508(D) can be an independent and adequate state ground to preclude federal review of a claim when the state court relies on the procedural bar set forth in section (D)(3) of that rule, but this court also noted that decisions on the merits are possible under other sections of Rule 6.508(D). *See Abela v. Martin*, 380 F.3d 915, 921-23 (6th Cir. 2004). Because the mere incantation of Rule 6.508(D) does not mean, in and of itself, that the state court relied on a state procedural rule, this court will hold that the state court procedurally barred the claims at issue only when "the last state court from which the petitioner sought review . . . invoked the state procedural rule as a basis for its decision to reject reviewing the petitioner's federal claims." *Id.* at 921. When the last court to review the claim merely invokes Rule 6.508(D) in a short order, this court, to determine upon which grounds the last court was relying, will examine whether the lower state courts relied on a procedural bar or instead addressed the merits. *See id.* at 923-24. Not only must the last state court rely upon a procedural bar for that bar to act as an independent and adequate ground, but the petitioner must also have failed to comply with the rule at issue. *See id.* at 921. Applying this analysis to Wiedbrauk's case, six of his nine claims have been procedurally defaulted.

In this case, the Michigan Supreme Court and the Michigan Court of Appeals stated that Wiedbrauk's applications were "DENIED, because the defendant had failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," but these state appellate courts did not say

whether they were relying on a procedural bar. JA 106-07 (Orders). The state trial court, however, relied on a procedural bar to dismiss all but three of the claims that Wiedbrauk seeks to add to his petition. The trial court first noted that "[s]everal of the issues raised in the current motion were raised, and decided, on the direct appeal." JA 104. Although a state court is well advised to list specifically which claims it includes under different rationales when relying, at least in part, on a procedural bar that may serve as an independent and adequate state ground in federal court, *see Abela*, 380 F.3d at 924, we need not guess to which claims the district court referred in this particular case. A cursory glance of the Michigan Court of Appeals' opinion in the direct appeal demonstrates that three claims that Wiedbrauk seeks to add to his petition were raised on direct appeal: (1) his claim that his wife should not have been allowed to testify because of the state's spousal privilege, (2) his claim concerning the court's failure to instruct the jury on lesser-included offenses, and (3) his claim concerning his wife's allocution at sentencing. *See Wiedbrauk*, 1999 WL 33433527, at *1, *3, *4. The trial court held that all of the other claims, as Wiedbrauk conceded in the state court, "should have been raised in defendant's appeal of right." JA 105 (quoting Wiedbrauk's motion to the state court). Moreover, the trial court specifically referred to Rule 6.508(D)(3) in its opinion. JA 105. Because Wiedbrauk admits that he failed to comply with the rule and because the trial court relied on procedural grounds and never addressed the merits of six claims, the trial court's opinion "inspire[s] greater certainty that the Michigan Supreme Court actually relied on a procedural bar in rendering its judgment." *See Abela*, 380 F.3d at 923. Therefore, an independent and adequate state ground bars all claims except those three claims raised on direct appeal. Granting leave to amend would be futile as to those six defaulted claims.

As for Wiedbrauk's three remaining claims, granting leave to amend would also be futile because these claims do not relate back to the original petition. In the recent decision of *Mayle v. Felix*, __ U.S. __, 125 S. Ct. 2562, 2566 (2005), the Supreme Court held that, although claims otherwise barred by AEDPA's limitations period may be added to a habeas petition under Federal Rule of Civil Procedure 15 if they "relate back" to the "conduct, transaction, or occurrence" in the original petition, "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." It is not sufficient that the newly asserted claims "relate to the same trial, conviction, or sentence as a timely filed claim . . . ." *Mayle*, 125 S. Ct. at 2573-74. Wiedbrauk's claims, in light of *Mayle*, do not relate back.

Wiedbrauk's claim that his wife should not have been allowed to testify because of the state's spousal privilege does not share a factual basis with any of the other claims. Wiedbrauk argues that his wife's testimony relates to the same "core facts" as his claim concerning the prejudicial admission of graphic photographs. Although both forms of evidence may have concerned the same crime, what happened the night of the crime is not important in the adjudication of either claim. *See Mayle*, 125 S. Ct. at 2573. If any fact is relevant to the spousal immunity claim it would be that his wife testified against Wiedbrauk at trial. The facts important to the photographs claim is the nature of the photographs, the other available evidence, and purposes for which they were used. These claims do not share an "essential predicate," *see Mayle*, 125 S. Ct. at 2573, and thus the spousal privilege claim does not relate back to the claim concerning the photographs

admitted at trial.

Neither Wiedbrauk's challenge to his wife's allocution at sentencing nor his challenge that the court should have included lesser-included offenses in the jury instructions relates back to his original claims. Wiedbrauk makes only bare assertions in his brief that these claims relate to other claims in his original petition. *See* Wiedbrauk's Reply Br. at 14-15. He does not point to any claim to which his sentencing claim relates, and any relationship between these two claims and his original claims is not obvious to us. Therefore, these claims also do not relate back to any other claim, and granting leave to amend would be futile.

VI.

For the foregoing reasons, we affirm the district court's order denying Wiedbrauk leave to amend on the alternative ground of futility.