RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0244p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

NELDA KELLOM, individually and as personal representative of the Estate of Terrance Kellom, deceased; KEVIN KELLOM, TERIA KELLOM, LAWANDA KELLOM, and TERRELL KELLOM, individually; JANAY WILLIAMS, as personal representative of Terrance Kellom's two minor children, son, T.D.K., and daughter, T.D.K.,

*Plaintiffs-Appellants*,

*v.*

MITCHELL QUINN, et al.,

*Defendants*,

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

Nos. 22-1591/1592

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
Nos. 2:17-cv-11084; 2:19-cv-11622—Sean F. Cox, District Judge.

Decided and Filed:  November 8, 2023

Before:  SILER, MOORE, and THAPAR, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:**  Nabih H. Ayad, AYAD LAW, PLLC, Detroit, Michigan, for Appellants.  Zak Toomey, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

—————————————

**OPINION**

—————————————

THAPAR, Circuit Judge.  These cases present two types of claims:  some filed too soon, and some filed too late.  After a federal officer shot Terrance Kellom, Kellom's estate and family members sued.  But the estate sued before seeking administrative remedies, and the family raised their claims after the statute of limitations passed.  The district court dismissed the claims as premature or untimely.  We affirm.

I.

On April 27, 2015, federal agent Michael Quinn shot and killed Kellom while trying to arrest him.

*Kellom's estate.*  Nearly two years later, Kellom's estate sued Quinn, raising tort claims under the Federal Tort Claims Act and an excessive-force claim under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).  Following FTCA procedure, the United States replaced Quinn as the defendant to the tort claims.  *See* 28 U.S.C. § 2679(d)(1).  Then, the estate filed a claim with Quinn's employer, the Department of Homeland Security, based on Kellom's death.  DHS denied the claim.

The FTCA requires plaintiffs to seek relief "first" from the relevant federal agency before suing.  *Id.*  The estate, however, sued before filing a claim with DHS.  So, after DHS denied the estate's claim, the United States sent the estate a letter, explaining that the estate needed to bring a new lawsuit to proceed with its FTCA claims.

The estate didn't bring a new suit.  Instead, in May 2018, it amended its earlier-filed complaint, continuing to assert the same FTCA claims as before.  The United States moved for summary judgment, and the district court granted the motion.  The district court treated the FTCA's exhaustion requirement as jurisdictional and dismissed the estate's claims for lack of jurisdiction.  *See Exec. Jet Aviation, Inc. v. United States*, 507 F.2d 508, 514–15 (6th Cir. 1974).

That left the estate's *Bivens* claim.  The *Bivens* claim went to trial, and a jury ruled in Quinn's favor.

*Kellom's family members.*  Meanwhile, Kellom's family members brought their own FTCA claims based on Kellom's death.  They raised their claims by joining the estate's amended complaint.  The amended complaint was filed in May 2018, three years after Kellom was killed. At that point, the family hadn't sought relief from DHS.

Because the family sued before exhausting administrative remedies, the United States moved to dismiss their claims.  The district court granted the motion.  Then—in October 2018, nearly three-and-a-half years after Kellom's death—the family filed a claim with DHS.

DHS denied the claim, and the family returned to court.  Rather than rejoin the estate's lawsuit, the family started a new one.  The district court again dismissed the family's claims— this time, because the family waited too long to present their claims to DHS.  *See* 28 U.S.C. § 2401(b).  The FTCA gives plaintiffs two years to ask the relevant agency for relief.  *Id.*  The family waited three and a half.

*Appeals.*  The estate and family each appealed.  The estate argued that it cured its failure to exhaust by filing an amended complaint after exhausting administrative remedies.  The estate also argued that it was entitled to a new trial on its *Bivens* claim.  For their part, the family argued that their FTCA claims were timely because another statute—the Westfall Act—tolled the two-year statute of limitations.

We consolidated the two appeals.  We held the estate wasn't entitled to a new trial on its *Bivens* claim.  *Kellom*, 2021 WL 4026789, at *4–5.  On the FTCA claims, we agreed that the estate had violated the FTCA by suing before seeking remedies from DHS.  *Id.* at *3.  But we held the FTCA's exhaustion requirement is a mandatory claims-processing rule, not—as the district court held—a jurisdictional rule.  *Id.*  Because jurisdictional rules can't be waived or forfeited, the district court never considered whether the United States waived or forfeited its exhaustion defense.  *See id.*  So, we remanded for the district court to decide whether the United States properly presented the defense and whether the estate's amended complaint cured its failure to exhaust.  *Id.*  We didn't address the family's appeal.  *See id.*

On remand, the district court kept the two cases consolidated. It held that the United States properly presented the exhaustion defense. It also held that the amended complaint didn't cure the estate's failure to exhaust administrative remedies before suing. Since we didn't address the family's case, the district court reaffirmed its prior holding in that case, dismissing the family's claims as untimely.

Plaintiffs again appeal in both cases.

## II.

*The estate's appeal.* On remand, the district court held the United States didn't forfeit or waive the exhaustion defense. It also held the estate didn't cure its failure to exhaust by filing an amended complaint. We agree.

## A.

First, the United States didn't waive or forfeit its exhaustion defense. A party waives a defense by "knowingly and intentionally" relinquishing it. *Cradler v. United States*, 891 F.3d 659, 665 n.1 (6th Cir. 2018) (quoting *Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012)). And a party forfeits a defense by failing to raise it in the answer. *See* Fed. R. Civ. P. 12(b), (h); Fed. R. Civ. P. 8(c)(1); *Wood*, 566 U.S. at 470.

The United States did neither. Instead, the United States raised the exhaustion defense at every opportunity. *See United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020). It listed the defense in its answer to the estate's amended complaint. It raised the defense in a motion to dismiss. And, after that failed, it raised the defense again in a motion for summary judgment.

In response, the estate notes that when it asked to amend its complaint, the United States chose not to oppose the amendment. But a party doesn't forfeit a defense by failing to oppose a motion for leave to amend. Under the Federal Rules of Civil Procedure, defendants raise defenses *after* the complaint is filed, not before. *See, e.g.*, Fed. R. Civ. P. 12(b), (h). And, in any case, when responding to the estate's motion to amend, the United States expressly reserved its defenses.

The estate also argues the United States forfeited the defense by failing to move for reconsideration when the district court denied the United States's motion to dismiss. *See Am. Auto. Ins. v. Trans. Ins. Co.*, 288 F. App'x 219 (6th Cir. 2008). But nothing in the Federal Rules suggests that a party forfeits a defense by failing to move for reconsideration of a motion to dismiss. *See* Fed. R. Civ. P. 12(h). The Rules require only that parties raise defenses in a motion to dismiss or answer. The United States did both.

B.

Next, the estate didn't cure its failure to exhaust by filing an amended complaint.

An FTCA suit "shall not be instituted" until the plaintiff "first" presents the claim to the appropriate federal agency and the agency denies the claim. 28 U.S.C. § 2675(a). In *McNeil v. United States*, the Court held that a suit is "instituted" when "a new action" is "commenced." 508 U.S. 106, 110–11 (1993). "A civil action is commenced by filing a complaint." Fed. R. Civ. P. 3. So, the Court held, a plaintiff must exhaust administrative remedies before invoking the judicial process. *McNeil*, 508 U.S. at 112. A plaintiff who fails to comply can't cure that failure by exhausting administrative remedies while the suit is pending: the claim must be reasserted in "a new action." *See id.* at 110–12.

Here, the estate raised its FTCA claim in court before presenting it to DHS. *Kellom*, 2021 WL 4026789, at *3. Thus, after exhausting, the estate needed to dismiss its original claim and reassert it in a new action. *See McNeil*, 508 U.S. at 110–12. The estate didn't.

Instead, the estate amended its complaint. An amended complaint "supersedes an earlier complaint for all purposes." *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) (quotation omitted). But that doesn't change the critical fact: the estate "instituted" an FTCA suit before presenting its claim to DHS. *See McNeil*, 508 U.S. at 111–12. The estate's FTCA proceedings were premature, and the only way to cure that defect was to "commence[] a new action." *Id.* at 110; *see also Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) (holding an amended complaint doesn't cure an exhaustion defect); *Hoffenberg v. Provost*, 154 F. App'x 307, 310 (3d Cir. 2005) (per curiam) (same).

In response, the estate makes three arguments. First, the estate points to several out-of-circuit decisions allowing a plaintiff to raise an FTCA claim for the first time in an amended complaint. But in these cases, plaintiffs waited to raise their FTCA claims until after exhausting administrative remedies—exactly what the FTCA requires. *See, e.g.*, *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 856 (9th Cir. 2011); *Mackovich v. United States*, 630 F.3d 1134, 1135–36 (8th Cir. 2011) (per curiam); *Thomas v. Mace-Leibson*, No. 1:14-cv-2316 (SHR), 2015 WL 7736737, at *3 (M.D. Pa. Dec. 1, 2015). None suggests that a plaintiff can bring an FTCA claim *before* exhausting and cure the defect by reasserting the same claim in an amended complaint.

Second, the estate argues that *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), overruled *McNeil*. In *Arbaugh*, the Court criticized prior rulings for describing mandatory claims-processing rules in jurisdictional terms. *Id.* at 511. It held that these "drive-by jurisdictional rulings" should be given "no precedential effect on the question whether the federal court had authority to adjudicate the claim in suit." *Id.* (quotations omitted).

*Arbaugh* didn't mention *McNeil* or the FTCA. It's true—*McNeil* suggested (without addressing the question) that the FTCA's exhaustion requirement is jurisdictional. 508 U.S. at 109. But at most, *Arbaugh* prevents us from reading that suggestion to be a holding. *Arbaugh*, 546 U.S. at 511; *Copen v. United States*, 3 F.4th 875, 881 (6th Cir. 2021). It doesn't affect *McNeil*'s actual holding: a plaintiff must exhaust administrative remedies before bringing an FTCA claim. *See Copen*, 3 F.4th at 880–81 (recognizing the FTCA's exhaustion requirement is "mandatory"); *see also Kellom*, 2021 WL 4026789, at *2 (applying *McNeil* after *Arbaugh*); *Adu-Beniako v. Reimann*, No. 21-2978, 2022 WL 4538372, at *3 (6th Cir. July 12, 2022) (order) (same).

Third, because the FTCA's exhaustion requirement isn't jurisdictional, the estate argues that there can be exceptions. But the requirement is still mandatory. The FTCA says that a plaintiff "shall not" sue before exhausting remedies. 28 U.S.C. § 2675(a); *Copen*, 3 F.4th at 880–81. "Shall" means "shall." *Miller v. French*, 530 U.S. 327, 337 (2000). Regardless, the estate doesn't identify any exceptions that apply.

In sum, the estate violated the FTCA by suing prematurely.  It didn't cure that defect by filing an amended complaint.

## C.

The estate raises two other issues.  First, the estate argues that its original complaint didn't raise an FTCA claim, so it didn't need to exhaust administrative remedies before filing it.  Second, the estate argues that it's entitled to a new trial on its *Bivens* claim.

We've already resolved these issues.  The last time the estate's case was before us, we held the original complaint was subject to the FTCA.  *Kellom*, 2021 WL 4026789, at *3.  And we held the estate wasn't entitled to a new trial on its *Bivens* claim.  *Id.* at *5.  Those determinations "are binding," both on the district court "and the court of appeals upon subsequent appeal." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999).

## III.

*The family's appeal*.  Under the FTCA, claims are "forever barred" unless the claimant files them with the relevant federal agency "within two years after such claim accrues." 28 U.S.C. § 2401(b).  The family didn't file a claim with DHS until three-and-a-half years after Kellom was killed.  Thus, under the FTCA, their claims are "forever barred." *See id.*

There's one exception:  when the district court dismisses an FTCA claim for failure to exhaust, the Westfall Act gives the plaintiff 60 days, from the date of dismissal, to file an administrative claim.  *Id.* § 2679(d)(5)(B).  But this is a narrow exception.  It applies only when the United States substitutes itself as the defendant.  *Id.* § 2679(d)(5)(A).  And only if the administrative claim "would have been timely" had the plaintiff filed it "on the date the underlying civil action was commenced." *Id.*  We construe these criteria "strictly." *See Sullivan ex rel. Lampkins v. Am. Comm'y Mut. Ins. Co.*, 208 F.3d 215 (table) (6th Cir. 2000) (quoting *Lehman v. Nakshian*, 453 U.S. 156, 160–61 (1981)).

The family says the Westfall Act covers their claim.  But they didn't sue until three-and-a-half years after Kellom died.  Thus, even if the family had filed a claim with DHS "on the date the underlying civil action was commenced," they'd be too late.  28 U.S.C. § 2679(d)(5)(A).

To avoid this obstacle, the family asks us to look at a different date.  Since the family brought their FTCA claims by joining the estate's *amended* complaint, they joined an already existing civil action.  So, they argue, the date the "underlying civil action was commenced" is the date of the estate's *original* complaint, not the date they joined the lawsuit.  *See id.*

Generally, when an amended complaint adds claims or parties who weren't previously part of the lawsuit, the lawsuit "commence[s]" for those claims and parties when they are added. *See* Fed. R. Civ. P. 3; *United States ex rel. Statham Instruments, Inc. v. W. Cas. & Sur. Co.*, 359 F.2d 521, 524 (6th Cir. 1966).  In limited circumstances, the Federal Rules treat claims in an amended complaint as if they had been brought on the date of the original complaint.  Fed. R. Civ. P. 15(c).  But this "relation-back" doctrine doesn't apply when the amended complaint adds a new plaintiff.  *See* Fed. R. Civ. P. 15(c)(1)(C); *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318–19 (6th Cir. 2010); Wright & Miller, Federal Practice § 1501 (3d ed. Apr. 2023 update).  Otherwise, an untimely plaintiff could avoid a statute of limitations simply by joining a preexisting action.  *See Asher*, 596 F.3d at 318–19.  The estate's amended complaint added new parties (the family), so the family's claims don't relate back.

In a final stand, the family suggests we shouldn't apply the Federal Rules' relation-back doctrine.  In their view, by referencing the "date the underlying civil action was commenced," the Westfall Act creates its own relation-back doctrine:  namely, FTCA claims brought in amended complaints *always* relate back to the date of the original complaint.

This argument fails.  For one, we've repeatedly applied the Rules' relation-back doctrine in the context of the Westfall Act.  *See Allgeier v. United States*, 909 F.2d 869, 871–75 (6th Cir. 1990); *Hart v. Tyree*, 944 F.2d 904 (6th Cir. 1991) (per curiam) (table).  So have other circuits. *Mittleman v. United States*, 104 F.3d 410, 414–15 & n.3 (D.C. Cir. 1997); *Roman v. Townsend*, 224 F.3d 24, 28 (1st Cir. 2000); *see also Al-Dahir v. FBI*, 454 F. App'x 238, 243–44 (5th Cir. 2011) (per curiam).  We've never doubted—and we're not aware of any circuit that has—that the Rules' relation-back doctrine applies in the context of the Westfall Act.

For another, "we do not lightly infer" that Congress displaces the Federal Rules.  *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 436 (2023); *Califano v.*

*Yamasaki*, 442 U.S. 682, 700 (1979) (requiring "a direct expression" of intent to displace the rules). Nothing in the Westfall Act suggests that it is intended to displace Rule 15. The Act uses the date an "underlying civil action" is "commenced" as a reference point. 28 U.S.C. § 2679(d)(5). But it doesn't define those terms. It doesn't discuss amended complaints. Nor does it address when a civil action is "commenced." *See id.* That's because the Act didn't need to— the Federal Rules apply to all civil actions unless the Rules or Congress expressly provide otherwise. Fed. R. Civ. P. 1. So, it makes sense for the Westfall Act to adjust the statute of limitations while leaving the background rules to govern when a lawsuit commences. *See Polansky*, 599 U.S. at 436.

In sum, we look to the date that the family began civil proceedings to see when the family's FTCA suit "commenced." That was more than two years after Kellom was killed.

\* \* \*

We affirm.